THOMAS M. WAMPLER *v.* E. LEE LeCOMPTE,
STATE GAME WARDEN, ET AL.
[No. 30, April Term, 1930.]

*Decided May 22nd, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Charles Linkins,* with whom was *J. Read Bailey* on the brief, for the appellant.

*Robert H. Archer, Assistant Attorney General,* and *Henry H. Johnson,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellees.

Pattison, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Charles County, dismissing the bill of the appellant, Thomas M. Wampler, a resident of that county, and the owner of a pracel of land in Charles County, bordering upon the Potomac River.

The bill alleges that E. Lee LeCompte, and Frederick S. Barber, the appellees, destroyed a booby, brush, or stake blind of the appellant, located and erected by him in the Potomac River, in front of his shore line, not more than 300 feet therefrom, after having first procured a license therefor, as provided by law. That the appellees not only destroyed his blind, so erected, but they threatened to destroy, and to continue to destroy, any blind that he might thereafter erect at that location, and the bill asked that the appellees be restrained from molesting, or interfering with the appellant in again locating, or erecting and maintaining, a blind at such place.

The appellees, E. Lee LeCompte, state game warden, and Frederick S. Barber, deputy district game warden, answered the bill, averring therein that what they did, as alleged by

the appellant in his bill, was lawfully done by them, as officers, in the enforcement of sections 40, 41 and 46 of article 99 of the Code of Public General Laws of Maryland, Supplement 1929, title, Water Fowl, Birds and Game; subtitle, Water Fowl and Migratory Birds; the provisions of which, the appellant contends, violate the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

Section 40 of article 99 provides that all owners of riparian rights on the waters of this state shall by virtue of said ownership be first entitled to make a choice of position in front of their property for the purpose of erecting and maintaining a booby, brush or stake blind, provided they avail themselves of such right by obtaining a license therefor, as required by section 44 of said article, and by marking the location and erecting the blind in the manner and within the times therein stated.

Section 41 of said article provides that it shall be unlawful to erect or maintain any blind at a greater distance than 300 yards from the natural shore from which same may be erected; and not less than 500 yards apart measured in a straight line, except "in the tributaries of the Chesapeake Bay and in the tributaries of the Potomac River in Charles County and on the waters of Baltimore County," where "said blinds shall not be less than 250 yards apart, measured in a straight line."

Section 46 of said article provides that "whenever an owner of land bordering on any waters of this State shall desire to erect a booby, brush or stake blind in front of his property, or other person to whom he shall give permission, he shall not place same within 250 yards of the dividing line of any property owned by him and the adjoining property bordering on said waters (the distance contained herein shall not apply to the waters that are tributary of the Chesapeake Bay and the Potomac River in the Counties of Charles, Calvert and St. Mary's), meaning a line extending out over the waters drawn direct from the dividing line of said properties at the shore line, unless with the consent of the adjoining landowner,.

same being for the purpose of allowing each landowner bordering on any of the waters of the State permission to avail himself of the privilege of setting, erecting and maintaining a booby, brush or stake blind in front of his property."

The question thus raised by this appeal is whether the above sections of the Public General Laws of Maryland violate the Federal Constitution.

These and other sections of article 99 of the Code were enacted to regulate the killing of water fowl in the waters of the State of Maryland, and were so enacted in the exercise of the police power of the State. The contention is, that these provisions of the statute are arbitrary in their classification and consequently deny the equal protection of law to those whom they affect.

As stated in *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 78: "The rules by which this contention must be stated, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. *Bachtel v. Wilson*, 204 U. S. 36, 41; *Louisville & Nashville R. R. Co. v. Melton*, 218 U. S. 36;; *Ozan Lumber Co. v. Union County Nat. Bank*, 207 U. S. 251, 256; *Munn v. Illinois*, 94 U. S. 113, 132; *Henderson Bridge Co. v. Henderson City*, 173 U. S. 592, 615."

The statute here assailed gives to the owners of land in this state, subject to the regulations therein contained, certain gunning privileges on the waters in front of their lands, if exercised by them within the time prescribed by the statute, but should they fail to avail themselves of such privileges within the time allotted them, they pass to others, who may thereafter conform to the requirements of the statute. The validity of these privileges, revocable at any time by legislative enactment, was recognized by this court in the case of *Sheehy v. Thomas,* 155 Md. 688; and similar statutes granting like privileges to land owners to use the waters and the bottoms thereunder, in catching fish and in the cultivation and taking of oysters, have also been held valid by this court. *Dean v. Slacum,* 149 Md. 578.

The State has the undoubted right, subject to the laws of the United States in respect to navigation, to regulate the killing of water fowl from blinds erected in the waters of this state, so long as it makes no unreasonable and unfounded general classification denying any person the equal protection of the law. In *Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 576, the court said: "This court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority."

The provisions of the statute making it unlawful to erect blinds in the waters of this state, at a greater distance than 300 yards from the shore and not less than 500 yards apart, measured in a straight line, were enacted for the conservation of water fowl and the protection and safety of those engaged in shooting them. The necessity for such regulation is apparent, for if blinds could be erected in broad waters at any distance from the shore, without regard to the distance separating them, it would not only be conducive to the destruction and annihilation of ducks and other water fowl, but extremely dangerous to those shooting them.

If all owners of land bordering upon the waters of this state, including those whose shore lines are less than 500 yards, were granted the privileges mentioned in the statute, there would not be a compliance with its provisions that blinds should not be erected less than 500 yards apart, or closer than 250 yards from the lines of the adjoining land owners, which provisions were thought necessary by the Legislature for the purposes above stated.

The Legislature, in its desire to extend the privileges conferred by the statute, whenever possible, without violating the objects and purposes of the statute, to owners having a frontage upon the water of less than 500 yards, inserted in the statute the provision that an owner of land, with the consent of the adjoining land owners, could avail himself of the privileges of erecting and maintaining a blind in front of his land. This provision, of course, was subject to the further provision that the blind when so erected should not be less than 250 yards from the lines of an owner whose consent he had not obtained, and not closer than 500 yards to the nearest blind erected in accordance with the provisions of the statute.

The location of the blind here sought to be erected by the appellant was in the waters of the Potomac River, where, by the statute, blinds were not to be erected less than 500 yards apart. The land owned by him bordered upon said river for a distance of only 43 7/10 feet. Therefore, he had to acquire the permission or consent of owners of land bordering upon said river extending thereon for a distance of at least 250 yards on each side of the position at which his proposed blind was to be located, before he could avail himself of the privileges of the statute. It was because of his inability or failure to obtain such permission or consent that he was not permitted to erect a blind in front of his land. This fact he complains of, contending that the discrimination resulting from the provisions of the statute, whereby those obtaining the necessary consent could erect a blind and those who could not obtain such permission or consent could not erect one, was an unlawful discrimination against the latter.

That the right of an owner, having a shore frontage less than 500 yards, to erect and maintain a blind in the waters in front of his land is by the statute made dependent upon his ability to obtain the consent of adjoining land owners does not render the statute unconstitutional. If, as thought by the appellant, his inability to obtain such consent is a hardship or inequality upon him, such fact does not warrant us in holding that the statute contravenes the Constitution. In *Jeffrey v. Blagg, supra,* the court said "that a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the Legislature must be allowed a wide field of choice in determining the subject matter of its laws, what shall come within them, and what shall be excluded."

It is also contended by the appellant that the Federal Constitution is violated by the provisions of the statute which provide that blinds when erected in certain inland water of the state need not be further apart than 250 yards. Why these provisions were inserted in the statute we are not informed, but we may assume, until the contrary is shown, that a state of facts in respect thereto existed, which warranted the Legislature in so legislating. In *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 78, *supra,* the court said: "If any state of facts can reasonably be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed," and "one who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

As to the waters of the Potomac River in Maryland, the privileges mentioned in the statute are conferred upon the owners of land bordering upon said waters for the distance of at least 500 yards, or upon those owners with less shore frontage, having the consent of adjoining and nearby owners, who, with them, have in the aggregate an unbroken shore line of at least 500 yards, to erect blinds in front of the lands of such owners or in front of their own lands. This

classification reasonably conserves the objects which the Legislature had in view in the enactment of the statute, the conservation of wild fowl and the protection of those hunting or shooting them, and it is not, in our opinion, arbitrary or unreasonable.

Therefore the decree denying the injunction and dismissing the bill will be affirmed.

*Decree affirmed, with costs.*