The Honorable Ron Cochran Sheriff, Broward County Post Office Box 9507 Fort Lauderdale, Florida 33310-9507
Dear Sheriff Cochran:
You have asked for my opinion on substantially the following question:
Is the Sheriff authorized to delegate the execution and service of civil and criminal process to municipal police officers pursuant to the terms of a mutual aid agreement or after specially deputizing such municipal police officers?
In sum:
The authority to execute and serve process, including arrest warrants, is exclusively vested in the Sheriff and such authority may be delegated by appointing special deputy sheriffs to perform this function. However, while municipal police officers are not authorized to execute arrest warrants, they do have the authority under s. 901.15(4), F.S., to make arrests when an arrest warrant has been issued and is held by another peace officer for execution.
There are numerous situations in which law enforcement officers, not limited to the sheriff or deputy sheriffs, may arrest a person without a warrant.[1] However, you have specifically requested my assistance in determining the appropriate procedure for delegating the power to execute and serve civil and criminal process, including arrest warrants, pursuant to s. 30.15, F.S., and s.741.30(8)(a), F.S. (1992 Supp.), to officers in various municipal police departments.
Service of process of the courts of this state is a matter of procedure and the exclusive power to make rules governing the practice and procedure in the state courts is vested in The Supreme Court of Florida pursuant to s. 2, Art. V, State Const.[2]
Rule 1.070, Florida Rules of Civil Procedure, is an example of the Court's implementation of that power and provides that "[s]ervice of process may be made by an officer authorized by law to serve process but the court may appoint any competent person . . . ."[3]
(e.s.) Thus, those persons responsible for serving process may be specifically designated by statute.
Section 30.15, F.S., expressly provides that:
(1) Sheriffs, in their respective counties, in person or by deputy, shall: (a) Execute all process of the Supreme Court, circuit courts, county courts, and boards of county commissioners of this state, to be executed in their counties. (b) Execute such other writs, processes, warrants, and other papers directed to them, as may come to their hands to be executed in their counties.
Section 30.15(1), F.S., provides that sheriffs, in person or by deputy, shall execute in their respective counties all process of the courts of this state that is executed in their counties.[4]
Section 901.04, F.S., requires that arrest warrants be directed to all sheriffs of the state and directs that "[a] warrant shall be executed only by the sheriff of the county in which the arrest is made . . . ." When the Legislature has prescribed the method of doing a thing, that direction must be followed, and when the controlling law directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way.[5]
These statutes, when read together, direct that arrest warrants or any other criminal or civil process issued by the state courts shall be executed or served by the sheriff or his deputies.[6]
Therefore, as this office has previously determined, service of criminal and civil process and arrest warrants by a municipal police officer is not only unauthorized but is prohibited.[7]
I must emphasize, however, that s. 901.15(4), F.S., provides that any law enforcement officer may arrest a person without a warrant when "[a] warrant for the arrest has been issued and is held by another peace officer for execution." Municipal police officers frequently utilize this provision of the statutes when making arrests and such arrests are lawful and valid.
Mutual Aid Agreements
Part I, Ch. 23, F.S. (1992 Supp.), the Florida Mutual Aid Act, creates a state law enforcement mutual aid plan which provides for the coordination of law enforcement planning, operations, and mutual aid.[8] Specifically, s. 23.1225(1), F.S. (1992 Supp.), defines one type of mutual aid agreement as:
(a) A voluntary cooperation agreement, in writing, between two or more law enforcement agencies which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency, and any other terms and conditions necessary to give it effect. An example of the use of a voluntary cooperation agreement is to provide for a joint city-county task force on narcotics smuggling. (e.s.)
The act recognizes that law enforcement assistance will cross jurisdictional lines under a mutual aid agreement. In further recognition of the authority to exercise extraterritorial law enforcement under the act, s. 23.127, F.S. (1992 Supp.), provides as follows:
(1) Any employee of any Florida law enforcement agency who renders aid outside the employee's jurisdiction but inside this state pursuant to the written agreement entered under this part has the same powers, duties, rights, privileges, and immunities as if the employee was performing duties inside the employee's jurisdiction. Any employee rendering aid pursuant to an interstate mutual aid agreement entered under this part shall have such powers, duties, rights, privileges, and immunities as the parties agree are consistent with the laws of the jurisdictions involved and with the purposes for which such agreement was entered.
* * * (3) The privileges and immunities from liability, exemption from laws, ordinances, and rules, and pension, insurance, relief, disability, workers' compensation, salary, death, and other benefits that apply to the activity of an employee of an agency when performing the employee's duties within the territorial limits of the employee's agency apply to the employee to the same degree, manner, and extent while engaged in the performance of the employee's duties and extraterritorially under the provisions of the mutual aid agreement. This section applies to paid, volunteer, and auxiliary employees. (e.s.)
Thus, a mutual aid agreement entered into pursuant to Part I, Ch.23, F.S. (1992 Supp.), does not contemplate a transfer of power from one entity to another. Rather, it represents a contract or authorization extending the jurisdiction of a law enforcement agency extraterritorially.[9]
Therefore, it is my opinion that a mutual aid agreement between the sheriff and a municipal police department cannot vest the police department or its officers with the exclusive authority of the sheriff to execute process pursuant to s. 30.15, F.S., or s.901.04, F.S.
Deputization
Pursuant to s. 30.07, F.S., "[s]heriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them . . . ." Florida courts have recognized that a deputy sheriff is not an ordinary employee but rather is an officer who holds his or her appointment from the sheriff and who acts as the alter ego of the sheriff.[10]
Section 30.09(4), F.S., specifically authorizes the sheriff to appoint special deputy sheriffs under a number of circumstances including:
(a) On election days, to attend elections. (b) To perform undercover investigative work. (c) For specific guard or police duties in connection with public sporting or entertainment events, not to exceed 30 days; or for watchman or guard duties, when serving in such capacity at specified locations or areas only. (d) For special and temporary duties, without power of arrest, in connection with guarding or transporting prisoners. (e) To aid in preserving law and order, or to render necessary assistance in the event of any threatened or actual hurricane, fire, flood, or other natural disaster, or in the event of any major tragedy such as an airplane crash, train or automobile wreck, or similar accident. (f) To raise the power of the county, by calling bystanders or others, to assist in quelling a riot or any breach of the peace, when ordered by the sheriff or an authorized general deputy. (g) To serve as a parking enforcement specialist pursuant to s.316.640(2).[11]
Thus, the law currently recognizes a number of situations in which a sheriff may appoint special deputies.
Considering the expansive language of s. 30.09(4), F.S., this office determined in AGO 73-436 that the Legislature did not intend to limit the appointment of special deputy sheriffs to only those situations specifically mentioned in the statute. Therefore, it was concluded that a sheriff is authorized to appoint special deputies for the purpose of serving civil process. Based on the same reasoning, this conclusion would appear to extend to the service of criminal process. Therefore, it is my opinion that a sheriff may delegate the authority to execute and serve civil and criminal process of the courts to municipal police officers by appointing these officers as special deputies to serve process.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Pursuant to s. 901.15, F.S., a law enforcement officer may arrest a person without a warrant under numerous circumstances including:
(1) The person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer. . . . (2) A felony has been committed and he reasonably believes that the person committed it. (3) He reasonably believes that a felony has been or is being committed and that the person to be arrested has committed or is committing it. (4) A warrant for the arrest has been issued and is held by another peace officer for execution. (5) A violation of chapter 316 has been committed in the presence of the officer. . . . (6) There is probable cause to believe that the person has knowingly committed an act in violation of an injunction for protection entered pursuant to s.741.30 or s. 784.046, which creates a threat of imminent danger to the petitioner or household members, over the objection of the petitioner, if necessary. (7)(a) There is probable cause to believe that the person has committed an act of domestic violence as defined in s. 741.30 or has committed child abuse as defined in s. 827.04(2) and (3) and reasonably believes that there is danger of violence unless the person alleged to have committed the battery or child abuse is arrested without delay.
* * * (8) He has probable cause to believe that the person has knowingly committed an act of repeat violence in violation of an injunction for protection from repeat violence entered pursuant to s. 784.046.
[2] Thus, municipalities possess no home rule power to grant their police officers the authority to execute process of the courts. See, AGO 81-38; s. 166.021(3)(b), F.S. (1992 Supp.).
[3] See also, Bradley Fiduciary Corporation v. Citizens and Southern International Bank, 431 So.2d 196 (3 D.C.A. Fla., 1983) (service of process a procedural matter and if statute conflicts on procedural point with court rule, the rule prevails); Petition of Stoll, 309 So.2d 190 (1 D.C.A. Fla., 1975) (service of process a procedural step within ambit of court's rule-making power).
[4] And see, s. 30.17, F.S., (sheriff's execution docket); s.30.231, F.S., (sheriff's fees for service of summons, subpoenas, and executions); s. 30.21, F.S., (failure to pay over money); s.30.30, F.S., (sheriff's duties and liabilities in levying writs and process); and s. 48.011, F.S., (process to be directed to sheriff).
[5] Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944). See also, Weinberger v. Board of Public Instruction, 112 So. 253, 256 (Fla. 1927); In re Advisory Opinion of the Governor Civil Rights,306 So.2d 520, 523 (Fla. 1975).
[6] But see, s. 943.04(2)(a), F.S., which provides that "the Division of Criminal Investigation [of the Department of Law Enforcement] may investigate violations of any of the criminal laws of the state, and shall have authority to bear arms, make arrests and apply for, serve and execute search warrants, arrest warrants, capias and other process of the court." (e.s.)
[7] See, AGO 83-28 (A municipal police officer is not authorized by law to execute or serve arrest warrants or any other criminal process issued by state courts and a sheriff is not authorized by law to delegate his duty to execute the criminal process of the state courts or to authorize or direct a municipal police department or a municipal police officer to execute or serve such process). Cf., AGO 71-107 (capias issued out of a criminal court of record may be served only by a sheriff, and not by a municipal police officer).
[8] Section 23.121(1)(a), F.S. (1992 Supp.). Part I, Ch. 23, F.S. (1992 Supp.), was amended by Ch. 93-211, Laws of Florida, but the changes made are not relevant to your inquiry.
[9] See, s. 2(c), Art. VIII, State Const., which permits the exercise of extraterritorial powers by municipalities when provided by general or special law. And see, AGO 90-84, concluding that s. 23.127(1), F.S., explicitly provides that whenever a law enforcement officer is rendering aid outside his or her jurisdiction pursuant to a mutual aid agreement, such officer is conferred the same powers, duties, rights, privileges, and immunities as if the aid were being given in the political subdivision in which he or she is normally employed; AGO 72-178, (determining that police officers serving outside their employers' jurisdictions pursuant to the Florida Mutual Aid Act would have extraterritorial law enforcement power to render aid in the jurisdiction they were called to assist, without the necessity of being deputized by the governing body of the jurisdiction assisted); and AGO 82-52.
[10] See, e.g., State ex rel. Rauscher v. Gandy, 178 So. 166
(1937); Blackburn v. Brorein, 70 So.2d 293 (Fla. 1954); and Evans v. Hardcastle, 339 So.2d 1150 (2 D.C.A. Fla., 1976). And see, AGO 53-311, November 17, 1953, Biennial Report of the Attorney General, 1953-1954, p. 24 ("[w]hile a deputy sheriff is not a public officer, he has the power to perform every function of the office of sheriff[.])
[11] Further, s. 30.09(4), F.S., provides that:
The appointment of any such special deputy sheriff in any such circumstance, except with respect to paragraph (g), may be made with full powers of arrest whenever the sheriff deems such appointment reasonable and necessary in the execution of the duties of his office. Except under circumstances described in paragraphs (a), (e), (f), and (g), the appointees shall possess at least the minimum requirements established for law enforcement officers by the Criminal Justice Standards and Training Commission. The appointment of any such special deputy sheriff shall be recorded in a register maintained for such purpose in the sheriff's office, showing the terms and circumstances of such appointment.